UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

UNITED STATES OF AMERICA          :

            v.                  :      Criminal No. 3:01CR216(AHN)

PHILIP A. GIORDANO           :

_____      June 12, 2007

GOVERNMENT'S MEMORANDUM IN AID
OF POST-*CROSBY* PROCEEDINGS ON REMAND

The Government submits this memorandum in response to the Court's Order inviting

written submissions from the parties on whether the Court would have imposed a materially

different sentence under an advisory Sentencing Guidelines regime.  The Government

respectfully submits that the Court would not have imposed a materially different sentence if the

Sentencing Guidelines had been advisory because in departing downward from the applicable

Guidelines of life imprisonment the Court, in effect, treated the Guidelines as advisory and

considered the various factors set forth in 18 U.S.C. § 3553(a) in fashioning a fair and reasonable

sentence.

Philip A. Giordano, the defendant, was an elected mayor of a Connecticut city who

repeatedly violated the civil rights of two children by coercing them to engage in sexual acts.

His aggravated sexual abuse of the two children over many months is deplorable, reprehensible,

and shocks the conscience of all good people.  The sentence imposed fairly punishes the

defendant for his depraved criminal conduct.

The Second Circuit affirmed the conviction in this case, remanding it to this Court for resentencing in accordance with United States v. Crosby, 397 F.3d 103 (2d Cir. 2005). By order dated July 25, 2006, this Court invited the parties to simultaneously submit their positions, in writing, on whether the Court would have imposed a materially different sentence if the Sentencing Guidelines had been advisory at the time the Court imposed sentence. The Court instructed the defendant to promptly notify the Court if it wished to avoid resentencing. The defendant has sought a resentencing. The Court, upon the defendant's motions, has extended the time to file a pleading on this issue.

**Procedural History**

On March 25, 2003, a jury unanimously found the defendant, a three-term Mayor of Waterbury, guilty of numerous federal crimes arising from his repeated sexual assaults of two young girls, ages eight and ten. Specifically, the jury found that he had violating the girls' civil rights (18 U.S.C. § 242; counts 1 and 2) and conspired to use (count 3) and used (counts 4-9 and 11-18[1]) telephones in connection with sexual crimes (18 U.S.C. § 2425 and § 371). The Government had called 48 witnesses in its case-in-chief and the defendant presented five witnesses and also testified on his own behalf.

Following the defendant's conviction, the Probation Office prepared a 63-page Presentence Report ("PSR"). The PSR included a multiple-count computation, which calculated adjusted offense levels for five separate categories of offenses: the civil rights offense involving Victim 1; the civil rights offense involving Victim 2; the conspiracy offense; the § 2425 counts

---

[1]. The jury could not reach a unanimous verdict on Count 10 involving a codefendant leaving a voice mail on the defendant's cellular telephone. Count 10 was later dismissed on the Government's motion.

involving Victim 1; and the § 2425 counts involving Victim 2.  The PSR arrived at a final

offense level of 48, resulting in application of level 43, which is the highest offense level in the

sentencing table, and a Criminal History Category of I.  PSR ¶¶ 169-170, 211.  The resultant

sentencing range was life imprisonment.  See U.S.S.G. § 5A (sentencing table) (Nov. 1, 2002

Guidelines Manual).

At the sentencing hearing on June 13, 2003, the district court adopted the findings and

conclusions of the PSR.  Sentencing Transcript ("Sent. Tr.")  at 10.  The district court

specifically found that the final offense level was 43, and that such a result would be appropriate

even under alternative calculations.  Sent. Tr. at 11.  In arriving at the Guidelines range, the

Court expressly found that the defendant had obstructed justice by filing a false affidavit,

threatening to kill Jones if she revealed his criminal conduct to anyone, and falsely testifying at

trial.  Sent. Tr. at 20-21.  The defendant's testimony at trial was, in the Court's view, "totally

unbelievable and not credible, and his attempt to exculpate himself and exonerate himself by

testifying falsely as he did in the court's view clearly warrants the adjustment for obstruction of

justice pursuant to 3C1.1 of the Sentencing Guidelines."  Sent. Tr. at 21.

The Government filed a motion for downward departure, pursuant to U.S.S.G. § 5K1.1,

based on the defendant's substantial assistance to the Government on July 23-25, 2001, after he

was initially contacted by federal agents.  The Court granted the Government's motion and

departed downward to a range of 360 months to life imprisonment.  Sent. Tr. at 9-10.  The Court

sentenced the defendant to concurrent sentences of 444 months (37 years) on each of the first

two counts, and 60 months for each of the remaining counts, to be followed by five years of

supervised release, plus a $1,700 special assessment.  Sent. Tr. at 45-46.

-3-

On June 19, 2003, the defendant filed a timely notice of appeal.  On October 20, 2004, the Second Circuit affirmed the defendant's conviction.  United States v. Giordano, 442 F.3d 430 (2d Cir. 2006), cert. denied, 1275 S. Ct. 1253 (2007).  On July 13, 2006, the Second Circuit ordered a limited remand in this case in light of the Supreme Court's decision in United States v. Booker, 543 U.S. 220, 258 (2005), and its own decision in United States v. Crosby, 397 F.3d 103, 110-18 (2d Cir. 2005).

**Limited Remands in Light of *Booker* and *Crosby***

In Booker, the Supreme Court held that the United States Sentencing Guidelines, as written, violate the Sixth Amendment principles articulated in Blakely v. Washington, 542 U.S. 296 (2004).  The Court determined that a mandatory system in which a sentence is increased based on factual findings by a judge violates the right to trial by jury.  As a remedy, the Court severed and excised the statutory provision making the Guidelines mandatory, 18 U.S.C. § 3553(b)(1), thus declaring the Guidelines "effectively advisory."  United States v. Booker, 543 U.S. 220, 125 S. Ct. 738 (2005).  This ruling results in a system in which the sentencing court, while required to consider the Guidelines, may lawfully impose any sentence within the statutory maximum penalty for the offense of conviction.  The sentence will be subject to appellate review for "reasonableness."  Id. at 125 S. Ct. at 766.

The Court of Appeals for the Second Circuit has summarized the impact of Booker as follows:

> First, the Guidelines are no longer mandatory. Second, the sentencing judge must consider the Guidelines and all of the other factors listed in section 3553(a). *Third, consideration of the Guidelines will normally require determination of the applicable Guidelines range,* or at least identification of the arguably applicable ranges, and consideration of applicable policy statements. *Fourth, the sentencing judge should decide, after considering the Guidelines and all the other factors set*

> *forth in section 3553(a), whether (i) to impose the sentence that would have been imposed under the Guidelines, i.e., a sentence within the applicable Guidelines range or within permissible departure authority, or (ii) to impose a non-Guidelines sentence.* Fifth, the sentencing judge is entitled to find all the facts appropriate for determining either a Guidelines sentence or a non-Guidelines sentence.

Crosby, 397 F.3d at 113 (emphasis added).  When imposing sentence, a district court must be mindful that "*Booker/Fanfan* and section 3553(a) do more than render the Guidelines a body of casual advice, to be consulted or overlooked at the whim of a sentencing judge." Id.  Both the Supreme Court and the Court of Appeals expect "sentencing judges faithfully to discharge their statutory obligation to 'consider' the Guidelines and all of the other factors listed in section 3553(a), . . . and that the resulting sentences will continue to substantially reduce unwarranted disparities while now achieving somewhat more individualized justice." Id. at 114.

In Crosby, the Court of Appeals determined that it would remand most pending appeals involving challenges to sentences imposed prior to Booker "not for the purpose of a required resentencing, but only for the more limited purpose of permitting the sentencing judge to determine *whether* to resentence, now fully informed of the new sentencing regime, and if so, to resentence." Crosby, 397 F.3d at 117.  In this respect, the Court of Appeals explained that a remand would be necessary to learn "whether a sentencing judge would have imposed a materially different sentence, *under the circumstances existing at the time of the original sentence*, if the judge had discharged his or her obligations under the post-*Booker/Fanfan* regime and counsel had availed themselves of their new opportunities to present relevant considerations." Id.  (emphasis added).  "In making that threshold determination, the District Court should obtain the views of counsel, at least in writing, but 'need not' require the presence of the Defendant . . . ." Id. at 120.  The defendant should, however, have an "opportunity . . . to

-5-

avoid resentencing by promptly notifying the district judge that resentencing will not be sought." Id. at 118. "Upon reaching its decision (with or without a hearing) whether to resentence, the District Court should either place on the record a decision not to resentence, with an appropriate explanation, or vacate the sentence and, with the Defendant present, resentence in conformity with the [Sentencing Reform Act], *Booker/Fanfan*, and this opinion, including an appropriate explanation, *see* § 3553(c)." Id. at 120

The Second Circuit has repeatedly held that a district court is not to consider evidence of a defendant's post-conviction rehabilitation on a Crosby remand. If the Court finds it would not have imposed a materially different sentence, that is the end of the matter. See Crosby, 397 F.3d at 120; United States v. Garcia, 413 F.3d 201, 229 (2d. Cir. 2005).

The Sentencing Guidelines are no longer mandatory, but rather represent one factor a district court must consider in imposing a "reasonable" sentence in accordance with Section 3553(a). See Booker, 543 U.S. 220, 258 (2005); Crosby, 397 F.3d at 110-18. Section 3553(a) provides that the sentencing "court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection," and then sets forth a number of specific considerations, including *inter alia* "the nature and circumstances of the offense and the history and characteristics of the defendant;" the need for the sentence "to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense," and "to afford adequate deterrence to criminal conduct; and "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." The fact that the Sentencing Guidelines are no longer mandatory does not reduce them to "a body of casual advice, to be consulted or overlooked at

the whim of a sentencing judge." Id. at 113.  Still, "[w]hile a district court must consider each § 3553(a) factor in imposing a sentence, the weight given to any single factor 'is a matter firmly committed to the discretion of the sentencing judge and is beyond our review.'"  United States v. Capanelli, 479 F.3d 163, 165 (2d Cir. 2007) (per curiam) (quoting United States v. Fernandez, 443 F.3d 19, 32 (2d Cir.), cert. denied, 127 S. Ct. 192 (2006)).[2]

In determining the reasonableness of a sentence, the primary inquiry will be on the district court's compliance with its statutory obligation to consider the factors detailed in 18 U.S.C. § 3553(a).  Id. (citing United States v. Canova, 412 F.3d 331, 350 (2d Cir. 2005)).

## Discussion

The Government respectfully submits that had the Court would have imposed that same sentence even if the Sentencing Guidelines were advisory at the time it sentenced the defendant.  The sentencing judge explained that he had given the defendant's sentence more thought than any other case in his many years on the bench.  The Court said:

> I've thought long and hard about this case and about your sentencing.  I probably have spent more time thinking about this case and your sentence than I have on any case that I can remember.  I've been on the bench almost 18 years, and before that I was United States Attorney for four years.  I presided over many trials, drug trafficking, murder, and a whole range of cases involving antisocial behavior.  This case is the worst I've ever seen.  Your conduct is the worst I've ever seen and I've seen drug dealers and murderers, but what you did is indescribable.

> You're an educated man.  You went to college.  You went to law school.  At a young age you embarked on a political career.  You were a golden boy.  You

---

3.  On November 3, 2006, the Supreme Court granted *certiorari* in companion cases to determine whether extraordinary circumstances must be present to justify deviation from the presumptive guideline range and whether a sentence within a correctly calculated guideline range is presumptively reasonable.  *See Claiborne v. United States*, 127 S. Ct. 551 (2006), and *Rita v. United States*, 127 S. Ct. 551 (2006).

were a state legislator, a mayor of a major Connecticut city.

Sent. Tr. at 41.

The sentencing Court went on to explain that defendant was a "sexual predator" who had preyed on innocent children. The Court said, "And then you started to engage in the worst kind of antisocial sexual behavior that one could imagine. Preying on two small, innocent children, eight and ten years old. They knew nothing. You, sir, are a sexual predator." Sent. Tr. at 41. The Court then read from reports of the children's therapist elaborating on how the defendant's assaultive and threatening conduct had damaged the two children. Sent. Tr. at 42-43. The Court explained:

> You destroyed these girls emotionally and psychologically. You preyed upon them and you destroyed their innocence to satisfy your own sexual desires. And only months before these phone calls began to be monitored, you ran for public office using the slogans, many of the slogans Mr. Jongbloed referred to, Tough on Crime, No Plea Bargaining, No Country Club Jails. You were the tough-on-crime guy.

In its remarks prior to imposing sentence, the Court said it would have imposed a life term as determined by the Sentencing Guidelines. The Court said:

> Your guidelines initially provided for a life sentence and I can tell you, Mr. Giordano, I would have had no hesitation in sentencing you to life for what you've done. Your conduct is beyond description, and I don't have to recount it here for these proceedings.

Sent. Tr. at 44. The Court said that it was departing from the Guidelines based on the Government's 5K1.1 motion and the defendant's cooperation with law enforcement, thus allowing the Court to sentence him to a term of less than life. Sent. Tr. at 9, 44-45. The Court explained its intention to sentence the defendant in a range of 30 years (360 months) or more given that it had departed from the Guidelines. Sent. Tr. at 9.

Given all the circumstances of this case, a 37-year sentence is fair, just, and reasonable. The defendant took an oath of office on January 1, 2000, that went as follows: "You, Philip Giordano, having been chosen  Mayor of the City of Waterbury, do solemnly swear that you will support the Constitution of the United States and the Constitution of the State of Connecticut so long as you continue a citizen thereof, that you are not subject to any of the disqualifications for holding said office enumerated in the Charter of said City, and that you will faithfully discharge the duties of said office to the best of your skill and ability, so help you God."  He swore, "I most certainly do."  The Charter for the City of Waterbury made the mayor the chief executive officer in charge of all departments.  (Government Appendix 5).  As Mayor, he had authority over all the City Departments, including the Waterbury Department of Police Service.  Under Waterbury's "strong mayor" form of city government, the Mayor had law enforcement and public safety responsibilities and, in certain limited circumstances, authority to order arrests.

The defendant cloaked himself with trappings of official authority.  He carried a police-type badge.  He had a cellular phone that was paid for by the City. As a mayor, the defendant used an unmarked Waterbury police cruiser with lights and a siren, which was available for his use 24 hours a day.  The most recent cruiser was a black 1999 Ford Crown Victoria bearing Connecticut license plate "1-WBY."

The defendant used his position as a mayor from approximately November 2000 to July 2001 to coerce two children under the age of 12 to engage in fellatio and genital contact with him and not report it to anyone.  These acts occurred in the Mayor's Office at the Chase Building, in his police-type cruiser, his former law office, his residence, and a friend's residence.

-9-

The child victims knew the defendant was the Mayor of Waterbury and knew he ran the City. One victim, said the Mayor "watches over us like God and sees everything like God." She did not tell anyone about the sexual assaults because she believed the Mayor would put her in jail because he had the power. Likewise, the second victim thought the Mayor was the boss of everyone, including her, and that he ruled everyone. She said she was afraid of him and thought he owned everyone. The second child victim though he could hurt her, her family, and her cousins. Every time after the assault the Mayor said not to say anything. She thought her family would get hurt and she would get into trouble. The girls were scared into silence by the defendant and his codefendant.

In the post-<u>Booker</u> sentencing regime, the Court must consider the guidelines in conjunction with the other factors enumerated in § 3553(a), in order to determine whether there is any reason to deviate from the guideline range. These factors include: (1) "the nature and circumstances of the offense and history and characteristics of the defendant;" (2) the need for the sentence to serve various goals of the criminal justice system, including (a) "to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment," (b) to afford adequate deterrence, (c) to protect the public from the defendant, (d) "to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;" (3) "the kinds of sentences available;" (4) the sentencing range set forth in the Guidelines; (5) policy statements issued by the Sentencing Commission; (6) the need to avoid unwarranted sentencing disparities; and (7) the need to provide restitution to the defendant's victims.

None of these factors weighs in favor of reducing the defendant's sentence. As set forth above, the Court has already considered the Guidelines and, indeed, departed downward from the applicable life Guidelines range. As demonstrated at the trial, the circumstances of the offenses of conviction were horrific and the defendant's obstructive conduct in trying to silence his codefendant and testifying falsely under oath was repugnant. Any credit that might accrue to the defendant as a first-time offender evaporated in light of the repeated abuse he visited upon the two victims in this case and, in any event, was vitiated by his manifestly dishonest testimony at trial. Considering the devastating impact that the defendant's actions had on his two victims, the need for a sentence "to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment," could, if anything, warrant a longer term of imprisonment.

Conclusion

The Government respectfully submits that the Court would not have imposed a materially different sentence under an advisory Guideline regime. The Court would not have imposed a materially different sentence in light of the advisory Guideline range and the other factors set forth in 18 U.S.C. § 3553(a). Resentencing, therefore, is unnecessary as the initial sentence was fair, just, and reasonable in this case. The Court should place on the record an appropriate explanation for reaching this decision.

Respectfully submitted,

JOHN H. DURHAM
DEPUTY UNITED STATES ATTORNEY


PETER S. JONGBLOED
ASSISTANT UNITED STATES ATTORNEY
Federal Bar No. ct03192


JOHN A. MARRELLA
ASSISTANT UNITED STATES ATTORNEY
Federal Bar No. ct19473
157 Church Street
New Haven, Connecticut  06510
(203) 821-3700

<u>CERTIFICATION</u>

This is to certify that on June 12, 2007 a copy of the foregoing was sent by facsimile and

mailed, postage prepaid, to:

Andrew B. Bowman, Esq.            Sandra L. Hunt
1804 Post Road East               United States Probation Officer
Westport, Connecticut 06880       157 Church Street
(Fax 203 255-2570)                New Haven, Connecticut 06510




_____

PETER S. JONGBLOED
ASSISTANT UNITED STATES ATTORNEY