UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

UNITED STATES OF AMERICA        :

                Plaintiff        :

VS.        :        DOCKET NO: 3:01CR216(AHN)

PHILIP A. GIORDANO        :

                Defendant        :        June 12, 2007

**DEFENDANT'S SUBMISSION IN SUPPORT OF RE-SENTENCING
PURSUANT TO *UNITED STATES VS. CROSBY* ON REMAND**

**1.  The Court Should Make A Threshold DeterminationThat
     Under An Advisory Guidelines Regime It Would Have Imposed
     A Substantially Lower Sentence**

This submission in behalf of the defendant Philip A. Giordano is in response to

the Court's July 25, 2006 Order after remand by the Court of Appeals pursuant to

United States vs. Crosby, 397 F.3rd 103 (2nd Cir. 2005).[1]  For the following reasons the

Court should make a threshold determination that it would have imposed a materially

different sentence on the defendant Giordano had it known the Guidelines were

---

[1] Giordano's conviction was affirmed March 3, 2006; United States vs. Giordano, 442 F.3rd 30 (2nd Cir. 2006); 172 Fed. Appx. 340 (2006)(unpublished opinion).  The Supreme Court denied certiorari on February 20, 2007; Giordano vs. United States, 125 S.Ct. 1253 (2007).

advisory.  Id. at 120.  If the Court answers the threshold determination in the affirmative, that is, it would have imposed a materially different sentence had it known the Guidelines were advisory, a resentencing should occur.  See, United States vs. Williams, 399 F.3rd 450, 461 (2nd Cir. 2003); see also, United States vs. Ferrell, ____ F.3rd ____, 2007 WL 1374756 (2nd Cir. 2007).   A 37 year sentence imposed on Philip Giordano under the then mandatory Sentencing Guidelines is tantamount to a life sentence without parole.  Title 18 U.S.C. §3553(a) requires a sentencing court to impose a sentence "sufficient but not greater than necessary," to comply with the statute's purposes.  Under Booker, "[s]ection 3553(a) remains in effect, and sets forth numerous factors that guide sentencing." Booker, 543 U.S. at 261.   The following represent the factors to be considered in imposing a reasonable and individualized sentence pursuant to Title 18 U.S.C. §3553(a).

### 2.  Factors To Be Considered in Imposing A "Reasonable" And "Individualized" Sentence Pursuant to Title 18 U.S.C. §3553(a)

Since the Supreme Court's decision in United States vs. Booker, 543 U.S. 220, 125 S.Ct. 738 (2005), the Sentencing Guidelines are no longer mandatory.  In United States vs. Crosby, 397 F.3d 103, 113 (2nd Cir. 2005), the Second Circuit has illuminated the following five "essential aspects" of Booker: first, the Guidelines are not

mandatory; second, the Court must "consider" the Guidelines, together with each of the other factors set forth in 18 U.S.C. §3553(a); third, the Court should determine the applicable, or arguably applicable, Guidelines range; fourth, the Court should determine whether to impose a Guidelines sentence or a non-Guidelines sentence; and fifth, the Court is entitled to find all facts appropriate for determining its sentence, whether under the Guidelines or otherwise.

Title 18 U.S.C. §3553(a) requires the Court to impose a sentence **"sufficient, but not greater than necessary,"** to comply with the statute's purposes.  Under Booker, "[s]ection 3553(a) remains in effect, and sets forth numerous factors that guide sentencing."  Booker, 543 U.S. at 261.  Those factors, in pertinent part, include:

(1) the nature and circumstances of the offense and the history and characteristics of the defendant;

(2) the need for the sentence imposed –

(A)  to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

(B)  to afford adequate deterrence to criminal conduct;

(C)  to protect the public from further crimes of the defendant; and

(D)  to provide the defendant with needed educational or vocational

training, medical care, or other correctional treatment in the most

effective manner;

(3) the kinds of sentences available;

(4)  the kinds of sentence and the sentencing range established for –

(A) the applicable category of offense committed by the applicable

category of defendant as set forth in the guidelines –

(i)     issued by the Sentencing Commission pursuant to

section 994(a)(1) of title 28, United States Code, subject

to any amendments made to such guidelines by act of

Congress (regardless of whether such amendments have

yet to be incorporated by the Sentencing Commission into

amendments issued under section 994(p) of title 28); and

(ii)    that, except as provided in section 3742(g), are in effect

on the date the defendant is sentenced; or

\*   \*   \*   \*   \*

(5) any pertinent policy statement –

(A)  issued by the Sentencing Commission pursuant to section 944(a)(2)

of title 28, United States Code, subject to any amendments made to

such policy statement by act of Congress (regardless of whether such amendments have yet to be incorporated by the Sentencing Commission into amendments issued under section 994(p) of title 28); and

(B) that, except as provided in section 3742(g), is in effect on the date the defendant is sentenced.

(6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

(7) the need to provide restitution to any victims of the offense.

Significantly <u>Crosby</u> did not suggest what weight should be accorded the Guidelines vis-à-vis the other statutory factors.  Accordingly, the Guidelines should be accorded no greater or lesser weight than the other factors and should simply be considered equally with them.  <u>Crosby</u> did not impose any "formula" for sentencing courts to follow in discharging their duty to consider the Guidelines.  No thoughtful system of justice can seriously consider individualized sentencing if restricted to a formula. Importantly, the Second Circuit emphasized its expectation that Courts will continue to discharge their sentencing obligations appropriately so as to reduce

unwarranted disparities, "while now achieving somewhat more individualized justice." Crosby, 397 F.3d at 114.

Summing up its view of the post-Booker approach to sentencing, the Second Circuit concluded: "In short, there need be no 'fear of judging.'" Id. See also, United States vs. Canova, 412 F.3d 331, 350 (2nd Cir. 2005)(prior to Booker, courts "understandably gave predominant, indeed controlling" weight to the Guidelines; and their policy statements; now courts must consider all of the statutory factors to fashion a just sentence); see also, Simon vs. United States, 361 F.Supp.2d 35, 40 (E.D.N.Y. 2005)("Guidelines are advisory and entitled to the same weight accorded to each other factor that the Court is instructed to consider by §3553(a). The Court's ultimate obligation on this Crosby remand is to impose a "reasonable" sentence, mindful of each of the applicable factors as set forth in §3553(a).

### 3. **The State Of Current Law In The Second Circuit.**

In United States vs. Crosby, 397 F.3rd 103 (2nd Cir. 2005), Judge Newman, writing the benchmark post-Booker decision in this Circuit after circulation to all judges of the Court, found these five critical factors essential to a lawful sentence; (1) the non-mandatory nature of the Guidelines; (2) the required "consideration" of the Guidelines, together with each of the other factors set forth in 18 U.S.C. §3553(a); (3) judicial

determination of the Guideline range; (4) judicial determination whether to impose a Guidelines or a non-Guidelines sentence; and (5) the sentencing court's entitlement to find all facts appropriate for determining its sentence, whether under the Guidelines or otherwise.  There is a statutory requirement under 18 U.S.C. §3553(a) requiring a sentencing court to impose a sentence "sufficient, but not greater than necessary" to comply with the statute's purposes.

Judge Newman's view of post-Booker sentencing was recently set forth again in United States vs. Jones, 460 F.3rd 191 (2nd Cir. 2006) (with Judge Walker, the author of Rattoballi, 452 F.3rd 127 (2nd Cir. 2006) dissenting).  In Jones, the sentencing judge imposed a non-Guideline sentence of 15 months imprisonment where the Guideline range was 30-37 months for violation of the federal convicted felon gun statute.  The sentencing judge found that Jones had a consistent work ethic; supported his wife and son; assisted and supported other members of his family; recently lost his father; and had attempted college and had made a "very good and positive" adjustment to state probation and finally that he would be subject to a much stiffer sentence if he violated supervised release upon his completion of his term of imprisonment.  Id., 460 F.3rd at 194. In addition, the sentencing judge acknowledged that part of his thinking was not explainable: "I just had a gut feeling about you"; "I still have the sense that Eric Jones

is capable of doing much better." Id., 460 F.3rd at 194. The sentencing judge took note that he had considered all sentencing factors set forth in 18 U.S.C. §3553(a) and the applicable Guideline and was "convinced that a non-guidelines sentence here is appropriate". Id.

On appeal the government argued that certain reasons relied upon by the district court including the defendant's education, emotional condition, favorable employment record, family support and good record at State probation were factors the Sentencing Commission concluded were not "ordinarily" relevant "in determining whether a departure is warranted". Id., at 194. Judge Newman specifically held that "[b]y citing the Guidelines' departure standards, however, the Government fails to appreciate that Jones's post-Booker sentence is not a Guidelines departure; it is a non-Guidelines sentence. See, Crosby, 397 F.3rd at 111 n.9." Jones, 460 F.3rd at 194. Judge Newman then found, "[w]ith the entire Guidelines scheme rendered advisory by the Supreme Court's decision in Booker, the Guidelines limitations on the use of factors to permit departures are no more binding on sentencing judges than the calculated Guidelines ranges themselves". Id.

A sentencing judge's obligation is to "consider" the Guidelines, see 18 U.S.C. §3553(a)(4), "along with the other relevant factors listed in section 3553(a), see United

States vs. Canova, 412 F.3rd 331, 350 (2nd Cir. 2005)…".  Judge Newman then pointedly found, "[b]ut 'consideration' does not mean mandatory adherence."  Id., at 194.

The Jones majority dismissed the government's argument that the sentencing judge's "expression of the subjective component of his thinking" was inappropriate in his consideration of a non-Guidelines sentence."  Id., 460 F.3rd at 195.  The sentencing judge stated that he had "the sense" that Jones was capable of doing better and that he had a "gut feeling about Jones".  Id.  The Jones majority found the government's criticism meritless, since it "fails to appreciate the enhanced scope of a sentencing judge's discretion in the post-Booker world of advisory Guidelines"; Id, at 195.

In considering the sentencing factors outlined in §3553(a), "the judge is not prohibited from including in that consideration the judge's own sense of what is a fair and just sentence under all the circumstances.  That is a historic role of sentencing judges, and it may continue to be exercised, subject to the reviewing court's ultimate authority to reject any sentence that exceeds the bounds of reasonableness".  Id, 460 F.3rd at 195.  Judge Walker holds a more restricted view as set forth in the dissenting opinion in Jones and his earlier opinion in Rattoballi.  It should be noted that Rattoballi was decided June 21, 2006, and Jones was decided August 2, 2006.

**4. Section 3553(a) Factors Require A Lesser Sentence
Than The 37 Year Sentence Imposed By The Court**

The nature and circumstances of this offense are well known to this Court and have been reported in the opinions of the Court of Appeals, <u>United States vs. Giordano</u>, 442 F.3d 30 (2nd Cir. 2006) and 172 Fed. Appx. 340 (2nd Cir. 2006)(unpublished).  Mr. Giordano is a Marine Corp. veteran and had no prior record before being convicted of the offenses set forth in the indictment.  A sentence of 20 years would have reflected the seriousness of the offense, would have been consistent with the public respect for the law and would have provided just punishment for the offenses for which Mr. Giordano was convicted.  Such a sentence would have afforded adequate deterrence to criminal conduct both on the specific level with respect to Mr. Giordano and with respect to the public at large.  A 20 year sentence would have protected the public from further crimes by this defendant and would have provided correctional treatment in the context of punishment.

Even taking into account the fact that Philip Giordano was the Mayor of Waterbury when the offenses were committed, and recognizing that the jury convicted Mr. Giordano of civil rights violations committed under color of law and that the Second Circuit has affirmed those convictions, it is inescapable that the conduct for which he

has been convicted was the result of a sex for money relationship with Guitana Jones, the mother and aunt of each of the two minor children respectively.

The object of sentencing is to impose just punishment.  The application of mandatory Guidelines calculations becomes unreasonable except when those calculations bear a rational relationship to years in prison for a particular defendant. For example, at the U.S. Penitentiary at Atwater where the defendant was confined prior to being moved to Connecticut pursuant to a Writ of Habeas Corpus Ad Prosequendum issued by the State Superior Court, defendant was kept in isolation 23 hours a day.  That an individual in our criminal justice system could serve a sentence in isolation for a period of 37 years even for a crime that has so offended the Court is cruel and inhumane.

While the Court certainly is not his jailer, we ask the Court to be mindful of the conditions under which this defendant has been and will continue to serve his sentence.  This sentence is a life sentence.  Philip Giordano was 39 years old when he was sentenced, and he has now been incarcerated for nearly 6 years since August 2001 when he was arrested.

Imprisoning this man in a U.S. Penitentiary until he is 76 is unreasonable. The mandatory adherence to the Guidelines put Mr. Giordano at level 43, and the Court

departed downward to level 41 pursuant to the government's motion for downward departure under §5K1.1.[2]  Now the question becomes whether, in the context of an advisory Guidelines regime, the defendant's personal characteristics, the nature and circumstances of the crime, specific and general deterrent factors render a 37 year sentence of imprisonment unreasonable.  We urge the Court to find that such a sentence is unreasonable and that had the Court sentenced Mr. Giordano in an advisory Guidelines context rather than a mandatory context, his sentence would have been far lower and substantially and materially different.

### 5.  <u>Advisory Departure Grounds</u>

Like the Guidelines themselves, the rigidity of downward departure considerations has changed; see <u>United States vs. Jones</u>, <u>supra</u>.  We ask the Court to consider once again the factors presented at the defendant's original sentencing in the post-<u>Booker</u> advisory context.

### a.  <u>Unusual Susceptibility to Abuse in Prison</u>.

This defendant had spent all but two months in segregation for the nearly 2 years spent in pretrial detention.  There were two factors which led to his segregation;

---

[2] In its unpublished opinion, <u>United States vs. Giordano</u>, 172 F.Ed.Appx. 340 (2nd Cir. 2006) the Court of Appeals found there was impermissible double-counting when a 2 level enhancement for "serious bodily injury" was imposed under USSG 2A3.1(b)(4)(B) <u>Id</u>. at page 5.  The Court found the error was harmless, because the combined offense level remained at the maximum possible adjusted level.

the first is the nature of the offense, and the second is his cooperation with authorities. In United States vs. Volpe, 78 F.Supp.2nd 76, 87-89 (EDNY 1999) affirmed, 224 F.3 72, 75 (2nd Cir. 2000), Judge Nickerson departed downward two levels, with the government conceding that the district court had discretion under Koon vs. United States, 518 U.S. 81, 116 S.Ct. 2035, 135 L.Ed.2d 392 (1996) and USSG §5K2.0. The district court granted a two level downward departure based upon "extraordinary notoriety of this case and the degree of general opprobrium toward Volpe [which] are matters of public record. Id, through 78 F.Supp.2nd at 89. Like Volpe, Giordano will be vulnerable to abuse in prison.

While a court might have to speculate about the future, history is certainly an appropriate guide in this case. The marshals and the corrections officials at the Putnam County Jail kept Mr. Giordano in segregation for all but two months of the two years of his pretrial confinement. In addition, he was kept in the mental health unit under lockdown when he was at the Garner Correctional Institution in Newtown during his trial. When counsel inquired as to the reason for such onerous conditions, he was advised that it was impossible to place Mr. Giordano in general population at Garner because his security was endangered.

As in <u>Koon</u> and <u>Volpe</u>, the publicity in this case, which was both intense and pervasive, coupled with the defendant's status as the Mayor of Waterbury is sufficient to find "unusual susceptibility to abuse".  <u>Koon</u>, 518 U.S. at 112, 116 S.Ct. at 2053 and <u>Volpe</u>, 78 F.Supp.2d at 89.

**b.  The Defendant Endured Two Years of Segregation in a State**
   **Rather Than A Federal Facility**

In <u>United States vs. Carty</u>, the Second Circuit recognized that the conditions of a pre-sentence detainee's confinement is a permissible ground for downward departure.  The Second Circuit stated:

> According to the Sentencing Guideline Manual, a sentencing court may depart if the court finds "that there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines."  U.S.S.G. §5K2.0 (quoting 18 U.S.C. §3553(b)).  No evidence exists to show that the Sentencing Commission took the conditions of a pre-sentence detainee's confinement into account in creating the Guidelines.  Indeed, there is no indication that the Commission contemplated that federal pre-sentence detainees would be kept in any detention facilities other than federal facilities.  See, <u>United States vs. Francis</u>, 129 F.Supp.2d 612, 616 (SDNY 2001).  Accordingly, we hold today that pre-sentence confinement conditions may in appropriate cases be a permissible basis for downward departures.

Carty, 264 F.3rd at 196.  Mr. Giordano lived in isolation.  That isolation is a factor that has characterized his confinement not only for the nearly two years preceding sentencing, but it is likely to continue for many years depending upon the length of this court's sentence.  As set forth below, his segregation was not the result merely of his own alleged conduct.  It is also a result of a decision he made to cooperate with the government.    The Court is familiar with threats having been made against the defendant prior to his sentencing in June 2003.

Mr. Giordano rendered substantial assistance to the government, and as a result he will be required to live with the threat to his safety not only because of the nature of the offense for which he has been convicted, but also because of the nature of the individuals against whom he cooperated.  This of course is a matter the Court may once again consider not only with respect to this particular ground for downward departure but also with respect to the downward departure for substantial assistance.

### c.  The Defendant's Military Service

Philip Giordano served in the United States Marine Corp from July 1981 to July 15, 1985.  As set forth in the presentence report, he completed his basic training at Parris Island, South Carolina and was stationed at Cherry Point, North Carolina, Meridian, Mississippi, two years in Okinowa, Korea and the Phillipines.   He was

eventually discharged honorably from Camp Pendleton, California.  His service was honorable and in support of his country.  This Circuit has recognized that military service is a valid ground for downward departure.  See United States vs. Workman, 80 F.3rd 688 (2nd Cir. 1996), cert denied, Rogers vs. United States, 519 U.S. 938, 117 S.Ct. 319, 136 L.Ed.2d 233 (1996); see also, United States vs. McCaleb, 908 F.2d 176, 179 (7th Cir. 1990) noting that military service could in principle warrant a downward departure even when not considered in conjunction with post-offense rehabilitation.

### d.  Extraordinary Impact Upon Family

The Second Circuit has interpreted U.S.S.G. §5H1.6 to mean that when a sentencing court determines the circumstances related to family ties and relationship are extraordinary, the Guidelines do not bar it from considering them as a basis for a downward departure; United States vs. Galante, 111 F.3rd 1029, 1033 (2nd Cir.), rehearing en banc denied, 120 F.3rd 788 (2nd Cir. 1987).  The Circuit has recognized that the district court has the best perspective as to the definition of exceptional hardship on the family resulting from imprisonment of one of its members; Galante, 111 F.3rd at 1034.

The defendant asks the Court to take the impact of this entire prosecution on the Giordano family into account in its threshold analysis.  We believe that this particular ground for departure is as relevant in a lengthy sentence as it is in a short sentence.  The defendant's father suffers from cancer, although it is in remission.  He was 74 years of age, and Olimpia was  68 years of age in June 2003.  The prospect of never seeing their son free again is a truly devastating and catastrophic prospect for them.  We ask the Court to consider the impact on the defendant's parents in coming to the appropriate sentence in this case.  With respect to the defendant's wife and children, at the time of sentencing, Dawn Giordano remained supportive of her husband.  She showed great courage during the course of the trial, and she faced a life of great uncertainty without her husband and worried about her children who will not have their father.  There is no evidence that Philip Giordano was ever abusive to his wife or to his children or that he presents any risk to them.

Finally, we ask the Court either to impose a non-Guideline sentence or to grant a substantial downward departure in this case for each of these grounds, taken alone or in combination with each other, see §5K2.0  The mandatory Guidelines calculation in the presentence report resulted in a sentence that was disproportionate to the crime for which the defendant was convicted.  Sentences of life imprisonment without parole

have traditionally been reserved in our criminal justice system for those who have intentionally taken the life of another and for those who are habitual and persistent offenders.  Giordano was a first offender.

Under Crosby and Jones supra, we respectfully ask the Court to look once again at the full impact and length of a sentence of imprisonment of 37 years imposed under a mandatory Guidelines regime as well as the conditions under which the defendant will serve that sentence.

This federal sentence is more than twice as long as the state sentence imposed on Philip Giordano for exactly the same conduct.  If the Court felt that the federal sentence should be longer, it would be be rational and reasonable to sentence Mr. Giordano to 5 years or 7 years greater than the state sentence.  While it is true that Mr. Giordano went to trial on his federal case, punishing him by more than double the punishment imposed in state court is excessive and unreasonable.  It is incumbent upon this Court to look once again at all of the §3553(a) factors and to find that under an advisory Guidelines structure, the sentence of 37 years was far too punitive.

Under Crosby, the Court has the ability to impose a non-Guidelines sentence consistent with the factors set forth in §3553(a) which is "sufficient but not greater than necessary" and falls within the reasonableness standard set forth in Booker and

<u>Crosby</u>.  Imposing a substantially lesser sentence would be consistent with justice and would not depreciate the seriousness of the offense for which the defendant was convicted.

We ask the Court to find that had an advisory Guidelines system been in place it would have imposed a materially and substantially lower sentence and then to proceed with imposing a substantially lower sentence than the 37 year sentence previously imposed by the Court in accordance with the mandatory system of Guidelines in place at the time the defendant was originally sentenced.  Because that sentence was unreasonable as a matter of fact and law, we ask the Court to order resentencing and to impose a sentence not greater than 25 years.

THE DEFENDANT
PHILIP A. GIORDANO


BY_____
    ANDREW B. BOWMAN, ct00122
    1804 Post Road East
    Westport, CT 06880
    (203) 259-0599
    (203) 255-2570 (Fax)
     e-mail: andrew.bowman@snet.net

**CERTIFICATION**

This is to certify that a copy of the foregoing was mailed, postage prepaid on this 12th day of June, 2007 to:

Peter Jongbloed, Esq.
Assistant U.S. Attorney
157 Church Street
New Haven, CT 06510

_____
ANDREW B. BOWMAN